CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
APR 17 2014
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRANDY OAKES, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No 7:13-cv-552 |
| | ) |
| DUSTIN HARLEY PATTERSON, et al., | ) By: Michael F. Urbanski |
| | ) United States District Judge |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff, Brandy Oakes ("Oakes") filed this action against defendants Dustin H. Patterson ("Deputy Patterson"), Ewell Hunt ("Sheriff Hunt"), Bill Overton ("Sheriff Overton"), and the Western Virginia Regional Jail Authority ("WVRJ"), asserting claims under 42 U.S.C. § 1983 and Virginia law. This matter is before the court on the motions to dismiss filed by Sheriff Hunt, Sheriff Overton, and the WVRJ. The issues have been fully briefed and oral argument was held on March 18, 2014. For the reasons stated below, Sheriff Overton and the WVRJ's motions to dismiss will be **GRANTED,** and Sheriff Hunt's motion to dismiss will be **GRANTED IN PART** and **DENIED IN PART**.

I.

Oakes' claims arise from an alleged sexual assault and battery by Deputy Patterson, a Franklin County Sheriff's Deputy, while Oakes was a pretrial detainee. Oakes originally filed this action in the Circuit Court for the City of Roanoke and Sheriff Hunt removed it to this court on the basis of federal question jurisdiction.[1] Deputy Patterson failed to file a responsive

---

[1] Oakes has alleged a claim under 42 U.S.C. § 1983 against Sheriff Hunt and Deputy Patterson. Oakes has not alleged any federal claims against the WVRJ or Sheriff Overton. However, Oakes' state law claims against these defendants arise out of the same actions that form the basis of her suit against Sheriff Hunt, such that the claims are part of the same suit. Thus, the court may exercise supplemental jurisdiction under 28 U.S.C. § 1367.

pleading in state court and is in default. See Notice of Removal, Dkt. No. 1, at 2. The amended complaint asserts claims against Deputy Patterson, Sheriff Hunt, who was Franklin County Sheriff at the time the alleged events occurred, Sheriff Overton, the current Franklin County Sheriff, and the WVRJ. Sheriff Hunt hired Deputy Patterson on November 1, 2010; however, Deputy Patterson was no longer employed as a sheriff's deputy when Sheriff Overton became Franklin County Sheriff.

The following facts, which are taken from the amended complaint, are accepted as true for purposes of the defendants' motions. See Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). Oakes, as a pretrial detainee of the Franklin County Sheriff, was being held in a holding cell located in Rocky Mount, Virginia, awaiting transport to the WVRJ. Deputy Patterson, who was on duty, was aware that Oakes had been discharged from the hospital immediately prior to her arrest, and was in the midst of a divorce. Though Oakes had never met Deputy Patterson, she claims that he is the brother-in-law of Oakes' daughter's father, and thus knew of her fragile emotional state. While she was in the holding cell in Rocky Mount, Deputy Patterson was unusually solicitous, looking into her cell on multiple occasions, and "asking her repeatedly whether she needed anything." Amend. Compl., Dkt. No. 1-3, at ¶ 19. Oakes alleges Deputy Patterson behaved this way "to groom Ms. Oakes for his planned sexual advances." Id. at ¶ 20.

Between approximately 12:00 a.m. and 1:00 a.m. on October 22, 2011, Deputy Patterson removed Oakes from her holding cell to transport her to the WVRJ. Deputy Patterson was instructed to transport Oakes using a transport van equipped with camera surveillance. However, instead, he placed Oakes in the front passenger seat of his service vehicle. While traveling to the WVRJ, Deputy Patterson fondled Oakes' breasts and, after unlocking Oakes' left hand cuff,

demanded that she touch his groin. Deputy Patterson drove past the WVRJ entrance to a nearby church parking lot where he continued to sexually assault Oakes.[2] Only when a dispatcher called over the radio, "asking Deputy Patterson for his location and inquiring why it was taking so long for his prisoner to arrive" did he stop his assault and transport her to the WVRJ.[3] Id. at ¶ 43.

Count I alleges claims for assault and battery against Deputy Patterson, Sheriff Hunt, and Sheriff Overton, in his official capacity. Count II alleges a negligence claim against the WVRJ. Count III alleges claims for gross negligence against Sheriff Hunt and Sheriff Overton, in his official capacity. Count IV brings a claim under 42 U.S.C. §§ 1983 and 1988 against Deputy Patterson and Sheriff Hunt. Finally, the amended complaint also asks for punitive damages against Deputy Patterson, Sheriff Hunt, and Sheriff Overton, in his official capacity. Defendants Sheriff Hunt, Sheriff Overton and the WVRJ have moved to dismiss Oakes' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 556

---

[2] Deputy Patterson parked and removed Oakes from the vehicle, where he unfastened his pants, exposed his penis, and rubbed against her. Oakes repeatedly told him "no." Thereafter, he put her in the rear of his vehicle, positioning himself so that his exposed penis was in her face. Oakes attempted to move away from him, again saying "no."

[3] The amended complaint does not specify whether the dispatcher was from the Franklin County Sheriff's Office or the WVRJ.

3

U.S. at 678. When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). While the court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.") (internal quotation marks omitted). Thus, in order to survive a Rule 12(b)(6) motion, the complaint must present sufficient nonconclusory factual allegations to support a reasonable inference that the plaintiff is entitled to relief and the defendant is liable for the unlawful act or omission alleged. See Francis v. Giacomelli, 588 F.3d 186, 196-197 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678-79, and Gooden v. Howard Cnty., Md., 954 F.2d 960, 969-70 (4th Cir. 1992) (en banc)). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

### III.

#### A. Sheriff Overton

Sheriff Overton brings a motion to dismiss counts I and III of the amended complaint. Sheriff Overton asserts that he cannot be sued in his official capacity. He further argues that he cannot be held vicariously liable for the actions of Deputy Patterson because he was not Sheriff of Franklin County at the time of the alleged sexual assault and he never supervised or employed

Deputy Paterson. Oakes responds that "whether the proper defendant is the sheriff at the time of the tort or the sheriff at the time of the lawsuit . . . is one of first impression." Resp. to Sheriff Overton's Mot. to Dismiss, Dkt. No. 12, at 5.

The amended complaint does not state claims against Sheriff Overton sufficient to withstand a motion to dismiss. The amended complaint alleges only state law claims against Sheriff Overton, distinguishing this case from instances where courts have found that successor liability of a sheriff is appropriate. In King v. McMillan, No. 7:05cv0521, 2006 U.S. Dist. LEXIS 51859, *1-2, 2006 WL 2126279, *1 (W.D. Va. July 28, 2006), plaintiff brought a Title VII action against a sheriff, alleging, among other things, that the sheriff had maintained a hostile work environment. After a new sheriff took office, the court substituted the new sheriff as the defendant pursuant to Federal Rule of Civil Procedure 25(d). The new sheriff argued that this substitution was improper because she was not the former sheriff's successor within the meaning of Rule 25(d). However, the court rejected this argument, concluding that a new sheriff is the former sheriff's successor and is, therefore, liable under Title VII in an action for damages. Id.; see also Briggs v. Waters, 455 F. Supp. 2d 508, 515-516 (E.D. Va. 2006). Significantly, while the court in King v. McMillian substituted the new sheriff in her official capacity as to plaintiff's Title VII claims, the former sheriff remained a defendant in his individual capacity as to plaintiff's other claims, including state law claims.

In the instant case, the only claims asserted against Sheriff Overton are state law claims for assault and battery and gross negligence. Additionally, because Sheriff Overton did not supervise or employ Deputy Patterson, there is no basis alleged to hold him vicariously liable for Deputy Patterson's alleged wrongful acts. Similarly, because Sheriff Overton was not Sheriff of

Franklin County when the events occurred, there is no basis for a gross negligence claim related to overseeing the sheriff's department and sheriff's deputies during that time.

Accordingly, the court will grant Sheriff Overton's motion to dismiss counts I and III of the amended complaint.

B. **WVRJ**

The WVRJ brings a motion to dismiss count II, which asserts a claim for negligence under state tort law. To state a claim for negligence, Oakes must allege the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage. Atrium Unit Owners Ass'n v. King, 266 Va. 288, 293, 585 S.E.2d 545, 548 (2003). Oakes claims that the WVRJ was "responsible for transporting...female detainees...from the Franklin County Jail to the WVRJ," and had a duty to both "ensure the safety and security of all prisoners being transported to and from the WVRJ" and to "supervise and monitor the vicinity of the WVRJ." Amend. Compl, Dkt. No. 1-3, at ¶¶ 58-60. The WVRJ asserts that it had no responsibility to transport Oakes to the WVRJ. It points to Virginia Code § 53.1-113, which provides that, "each political subdivision participating in a jail or jail farm shall bear the cost of transporting its prisoners to and from the jail or jail farm."[4] The WVRJ further argues that it did not employ Deputy Patterson, and had no duty or power to train or supervise a sheriff's deputy. The WVRJ states it was "simply the destination for transportation" and is not a proper defendant. Mot. to Dismiss, Dkt. No. 10, at 4.

---

[4] In support of the argument that it had no responsibility for the transport of Oakes to its facility, the WVRJ attached a Service Agreement to its memorandum in support of motion to dismiss. However, the court cannot consider this document without transforming the pending motion to dismiss into a summary judgment proceeding. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all material that is pertinent to the motion.) Accordingly, the court does not consider this document in making its ruling.

The court finds that Oakes has not pled sufficient facts showing that the WVRJ had the duties alleged. Deputy Patterson was a sheriff's deputy transporting Oakes from a holding cell in Rocky Mount, Virginia, and had not yet arrived at the WVRJ when the alleged assault occurred. Indeed, Deputy Patterson "intentionally passed the necessary turn off" to the WVRJ, and drove to a church parking lot. Amend. Compl., Dkt. No. 1-3, ¶ 34. Allegations of duty, accompanied by no factual support, are insufficient to support a reasonable inference that the WVRJ is liable. See Giacomelli, 588 F.3d at 193 (citing Iqbal, 556 U.S. at 679, and Twombly, 550 U.S. at 557) (finding that a complaint is insufficient if it relies upon "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement"). Further, Oakes' claim that the WVRJ failed to properly train its employees to prevent situations where a male deputy transported a female prisoner alone is inapposite, as there is no allegation that Deputy Patterson was an employee of the WVRJ.

Accordingly, the court will grant the WVRJ's motion to dismiss count II of the amended complaint.

### C. Sheriff Hunt

Sheriff Hunt brings a motion to dismiss counts I, III, and IV of the amended complaint.

(1) Count I: Vicarious Liability and Strict Liability.

The amended complaint alleges that Deputy Patterson's assault and battery occurred while he was on duty and acting within the scope of his employment as a sheriff's deputy, and that "the Franklin County Sheriff is strictly and vicariously liable" for the acts of Deputy Patterson. Amend. Compl., Dkt. No. 1-3, at ¶¶ 53-55. The amended complaint also alleges "as former Franklin County Sheriff, [Sheriff] Hunt is liable for his own actions and inactions and vicariously liable for Deputy Patterson's conduct . . . ." Id., at ¶¶ 55-56.

To state a claim under Virginia law that Sheriff Hunt is vicariously liable for Deputy Patterson's alleged conduct on the basis of *respondeat superior*, Oakes must allege that the assault and battery occurred while Deputy Patterson was performing his employer's business and acting within the scope of his employment.[5] See Butler v. Southern States Coop. Inc., 270 Va. 459, 465, 620 S.E. 2d 768, 773 (2005); see also Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc., 249 Va. 39, 43-44, 453 S.E.2d 261, 265 (1995) ("Under the doctrine of *respondeat superior*, an employer may be liable for an employee's tortious conduct where the activity that gave rise to the tortious act was within the scope of the employment.") Scope of employment has been defined as follows:

> Generally, an act is within the scope of the employment if (1) it was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business . . . .

Kensington Associates v. West, 234 Va. 430, 432, 362 S.E.2d 900, 901 (1987). However, in cases involving a willful and wrongful act of an employee, such as Deputy Patterson's alleged sexual assault, an employer may be held liable even if the conduct was not undertaken with the intent of furthering the employer's interest. See Gina Chin & Assocs. v. First Union Bank, 260 Va. 533, 541, 537 S.E.2d 573, 577 (2000). The Supreme Court of Virginia has defined liability under circumstances involving a willful and wrongful act of an employee, as follows:

> The courts...have long since departed from the rule of non-liability of an employer for wilful or malicious acts of his employee. Under the modern view, the wilfulness or wrongful motive which moves an employee to commit an act which causes injury to a third person does not of itself excuse the employer's liability therefor. The test of liability is not the motive of the employee in

---

[5] In Koffman v. Garnett, 265 Va. 12, 574 S.E.2d 258 (2003), the Supreme Court of Virginia explained that the "tort of assault consists of an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery." Id. at 16, at 261 (citation omitted). The Court defined the tort of battery as "an unwanted touching which is neither consented to, excused, nor justified." Id. (citations omitted).

> committing the act complained of, but whether that act was within the scope of the duties of employment and in the execution of the service for which he was engaged.

Plummer v. Center Psychiatrists, 252 Va. 233, 236-237, 476 S.E.2d 172, 174 (1996) (quoting Commercial Business Systems, 249 Va. at 45, 453 S.E.2d at 266). Thus, the relevant test to determine whether such conduct is within the scope of employment is "whether the service itself, in which the tortious act was done, was within the ordinary course of the employer's business." Blair v. Defender Servs., Inc., 386 F.3d 623, 627 (4th Cir. 2004) (quotations omitted); see also McNeill v. Spindler, 191 Va. 685, 694-695, 62 S.E.2d 13, 18 (1950) (If the servant steps aside from his master's business and is engaged in an independent venture of his own, the relation of master and servant is for the time suspended.).

When an employment relationship is established, this creates a *prima facie* rebuttable presumption of the employer's liability. Gina Chin & Assocs., 260 Va. at 542, 537 S.E.2d at 577-78 ("When the plaintiff presents evidence sufficient to show the existence of an employer-employee relationship, she has established a *prima facie* case triggering a presumption of liability."). The burden is then on the employer to prove that the employee was not acting within the scope of his employment when he committed the tort. Id.; Kensington Associates, 234 Va. at 433, 362 S.E.2d at 901; Broaddus v. Standard Drug Co, 211 Va. 645, 653-54, 179 S.E.2d 497, 504 (1971); McNeill, 191 Va. at 695, 62 S.E.2d at 18. "If the deviation from the [employer's] business is slight on the one hand, or marked and unusual on the other, the issue is for the court. Where the facts place the case between those two extremes, the question is for the jury." McNeill, 191 Va. at 695, 62 S.E.2d at 18; Drake v. Norfolk Steam Laundry Corp., 135 Va. 354, 116 S.E. 668.

Sheriff Hunt argues that the court should find on a motion to dismiss that Deputy Patterson was not acting within the scope of his employment. In support of this argument, Sheriff Hunt attempts to distinguish Plummer v. Center Psychiatrists, 252 Va. 233, 476 S.E.2d 172, and Heckenlaible v. Va. Peninsula Reg'l Jail, 491 F.Supp. 2d 544 (E.D. Va. 2007). In Plummer, the Supreme Court of Virginia held that an allegation that the employee therapist had engaged in an improper sexual relationship with a patient stated a cause of action against his employer under the doctrine of *respondeat superior*. Sheriff Hunt argues that, in that case, there was an allegation that the therapist's "education, experience, and knowledge of the plaintiff" enabled him to "[to overcome] her will so that she was unable to act with volition." Id. at 237. Sheriff Hunt asserts that "unlike the . . . psychologist's sexual assault in Plummer, [Deputy] Patterson's alleged sexual assault in this case was not a crime of opportunity, motivated by an impulse that arose from his duties." Mot. to Dismiss, Dkt. No. 25, at 5. However, the Supreme Court of Virginia's decision in Majorana v. Crown Cent. Petroleum Corp., is instructive on this point:

> While we noted in Plummer that the motion for judgment in that case contained specific allegations of circumstances that facilitated the wrongful act which caused the plaintiff's injury, these allegations were not dispositive to our decision. The sole issue in that case was whether the trial court erred by holding, as a matter of law, that the motion for judgment did not state the necessary elements of *respondeat superior* within its factual allegations. Clearly, the motion for judgment here contains an allegation of an injury caused by the willful and wrongful act an employee committed in the course of the employer-employee relationship and within the scope of his employment. It alleges that Bains was Crown's employee, that he assaulted Majorana at his regular place of employment, and that he did so while he was performing the business of his employer for which she was the employer's customer. Thus, as we said in Plummer, at this stage of the proceedings, there simply are not sufficient facts which would permit us to hold, as a matter of law, that the defendant has met its burden of showing that its employee was not acting within the scope of his employment.

260 Va. 521, 527 (2000).

10

In Heckenlaible, the court held that whether a correctional officer was acting within the scope of his employment when he sexually assaulted a prisoner in her cell was a jury issue. 491 F.Supp. 2d 544. Sheriff Hunt emphasizes the court's finding that "[the correctional officer's] impulse to have sexual contact with Heckenlaible may well have arisen, at least in part, from the fact that he was required to view Heckenlaible while she was unclothed in the shower." Id. at 551. However, the Heckenlaible court also noted that:

> [The] case reflects a situation where special circumstances related to employment facilitated the alleged intentional tort. [The correctional officer] could not have reached Heckenlaible within the confines of her cell were it not for his employment with the Jail Authority. Also, in announcing that he was entering her cell to conduct a search, [the correctional officer] arguably used the authority of his office to accomplish the wrongful act. Such facts weigh strongly against resolving the scope of employment issue, as a matter of law, in favor of the Jail Authority.

Id. at 552. Similarly, Deputy Patterson would not have had access to Oakes, and specifically access to her alone, in the middle of the night, were it not for his employment as a sheriff's deputy.

This court may ultimately determine that, as a matter of law, by improperly placing Oakes in the front seat of his own service vehicle and driving past the WVRJ to a church parking lot with the specific purpose of sexually assaulting Oakes, Deputy Patterson engaged in an independent venture, suspending the relation of master and servant. See Blair v. Defender Servs., Inc., 386 F.3d 623, 627 (4th Cir. 2004) (quotations omitted); see also McNeill, 191 Va. at 694-695 (Where employer had entrusted the employee with a truck to run a specific errand and had given him specific instructions where to return it, and the employee had disobeyed the instructions and driven the truck to another part of town to carry out a personal matter, a marked deviation was shown).[6] Indeed, Sheriff Hunt argues that Deputy Patterson's actions were

---

[6] The Supreme Court of Virginia stated in Gina Chin & Assocs, 260 Va. at 542-43, as follows:

11

"premeditated" in that he "groomed her for it; he disobeyed . . . orders and standard transportation protocol . . . and deviated from his regular route to the jail." Sheriff Hunt's Mot. to Dismiss, Dkt. No. 25, at 5. However, further development of the record is needed to make this determination.

As stated, under Virginia law, Oakes need only establish an employment relationship to create a *prima facie* rebuttable presumption of the employer's liability. Oakes has alleged that Deputy Patterson was an employee of Sheriff Hunt at the time of the alleged sexual assault. Amend. Compl., Dkt. No. 1-3, at ¶¶ 5, 7. The court finds that, at this stage in the proceeding, and without yet having the opportunity to offer evidence outside of the pleadings, Sheriff Hunt has not met his burden of showing that Deputy Patterson was not acting within the scope of his employment.

Accordingly, the court will deny Sheriff Hunt's motion to dismiss count I of the amended complaint regarding vicarious liability on the basis of *respondeat superior*.

To the extent Oakes asserts a claim in count I against Sheriff Hunt for strict liability for Deputy Patterson's actions, the court will grant Sheriff Hunt's motion to dismiss. See Amend. Compl. ¶ 54 ("Franklin County Sheriff is strictly…liable for the…acts of Deputy Patterson.") In Westmoreland v. Brown, 883 F. Supp. 67, 77 (E.D. Va. 1995), the court rejected

---

> Admittedly, the trial court's task may be particularly difficult in cases in which the injury is caused by an intentional, often criminal, tortious act which clearly would not have been contemplated by the employer as being within the scope of employment, but which nonetheless was performed incident to the employment and even facilitated thereby. Such cases invoke consideration of whether the employee deviated from the scope of his employment because of an external, independent, and personal motive to do the act upon his own account. In that regard, we have distinguished between the motive of the employee and the relevant question whether the service performed was within the scope of employment. In making this distinction, we have held that the motive of the employee in committing the act complained of is not determinative of whether it took place within the scope of the employment relationship. Rather, the issue is whether the service itself, in which the tortious act was done, was within the ordinary course of such business.

(internal quotations and citations omitted).

plaintiff's claim that the sheriff was "strictly liable for the conduct of [a deputy] taken under color of law" and therefore "liable for the attack against [plaintiff], both under § 1983 and under state law of assault and battery." The amended complaint does not sufficiently allege that Deputy Patterson was acting under the pretense of his authority as a deputy when he committed the alleged sexual assault against Oakes.[7] See Westmoreland, 883 F. Supp. at 77-78 ("Specific language in the strict liability decisions also supports the reading that the deputy must act under the pretense of the authority of his office to create strict liability."). Oakes' assertions that Deputy Patterson was carrying out Franklin County Sheriff's business in transporting Oakes to the WVRJ, was dressed in his uniform, and was carrying a firearm do not establish that Deputy Patterson purported to have lawful authority to sexually assault her. Moreover, the amended complaint does not allege that Oakes perceived Deputy Patterson to have such lawful authority.

Accordingly, to the extent that count I alleges a claim for strict liability against Sheriff Hunt, the court grants Sheriff Hunt's motion to dismiss.

(2) Count III – Gross Negligence

To state a claim for gross negligence, Oakes must allege that the defendant engaged in conduct that exhibited "the utter disregard of prudence amounting to complete neglect of the safety of another." Volpe v. City of Lexington, 281 Va. 630, 639, 708 S.E.2d 824, 828 (2011); see also City of Lynchburg v. Brown, 270 Va. 166, 613 S.E.2d 407, 410 (2005) (Gross

---

[7] Oakes cites to four Virginia state court decisions for the proposition that a sheriff is strictly liable for his deputy's conduct as if it were his own. See Mosby's Adm'r v. Mosby's Adm'r, 50 Va. 584, 603 (1853) (acts and defaults of a deputy, colore officii, are considered in law the acts and defaults of sheriff); Moore's Adm'r v. Dawney, 13 Va. 127, 132 (1808) (law looks upon sheriff and deputy as one person); James v. M'Cubbin, 6 Va. 273, 274 (1800) (sheriff shall answer civilly for all acts of his deputy); Miller v. Jones, 50 Va. 584, 602 (1853). However, as discussed above, in Westmoreland, 883 F. Supp. at 77-78, the court found that the deputy must act under the pretense of the authority of his office to create strict liability. Furthermore, in Mosby's Administrator, the court stated "[h]ence it is, that the [master] is never liable for the unauthorized, wilful or malicious act or trespass of the[servant]." 50 Va. at 603; But see Plummer, 252 Va. at 236 ("The courts . . . have long since departed from the rule of non-liability of an employer for wilful or malicious acts of his employee.").

negligence "is a heedless and palpable violation of legal duty respecting the rights of others. It is want of even scant care and amounts to the absence of slight diligence.") (internal citation and quotation marks omitted). Under Virginia law, governmental agents are immune from suit for simple negligence but not for gross negligence. Green v. Ingram, 269 Va. 281, 290-291, 608 S.E.2d 917 (2005).

The amended complaint alleges that "upon information and belief" Deputy Patterson had a history during his employment of "behaving inappropriately toward female prisoners" and, prior to his assault of Oakes, had been "investigated for other instances of sexually offensive behavior." Amend. Compl., Dkt. No. 1-3, at ¶ 64.

The amended complaint does not specify what this "inappropriate behavior" consisted of, clarify whether Deputy Hunt engaged in such behavior while he was a sheriff's deputy, or coherently allege that Sheriff Hunt knew about such "inappropriate behavior." The amended complaint further alleges that the Franklin County Sheriff breached its duties to oversee the Franklin County Sheriff's deputies, including responsibility for hiring, training, and firing, as well as its duties to keep Oakes safe while she was a pretrial detainee. Id. at ¶¶ 65-67. Finally, the amended complaint simply states, without specific factual support that:

> [Sheriff] Hunt's lax, indifferent, grossly negligent and reckless manner of running the Franklin County Sheriff's Department created an environment of entitlement and lawlessness among the deputies that emboldened Deputy Patterson to sexually violate a female prisoner without sufficient fear of reprisal to deter him from his predations.

Amend. Compl., Dkt. No. 1-3, ¶ 69. These allegations do not state a claim for gross negligence. See U.S. Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 317 (4th Cir. 2010) (quoting Twombly, 550 U.S. at 556) (holding that the complaint must present "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the alleged activity").

14

Accordingly, the court will grant Sheriff Hunt's motion to dismiss regarding count III.

(3) Count IV - § 1983

To establish liability under § 1983, a plaintiff must show that the defendant, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused injury. Brown v. Mitchell, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004). Section 1983 is a vehicle for the vindication of pre-existing federal rights rather than an independent source of substantive rights. Id. Sheriff Hunt moves to dismiss Oakes claim under 42 U.S.C. § 1983, against him in his individual capacity, on the grounds that he is entitled to qualified immunity. Sheriff Hunt argues that he is entitled to qualified immunity because a reasonable officer in his position would not have known that his actions were unlawful. See Shaw v. Stroud, 13 F.3d 791, 801 (4th Cir. 1994) (To prove that an officer lacks qualified immunity, a plaintiff must show, *inter alia*, that "a reasonable person in [the officer's] position would have known that his actions were unlawful.").

Oakes has not established that a reasonable person in Sheriff Hunt's position would have known that his actions were unlawful. The amended complaint does not adequately allege that Sheriff Hunt was aware of prior sexual misconduct by Deputy Patterson, or, that prior sexual misconduct even occurred. The amended complaint merely alleges that Sheriff Hunt failed to establish procedures which "would have revealed Deputy Patterson's history of inappropriate behavior toward female inmates and/or the fact that Deputy Patterson was the target of previous investigations of sexually offensive conduct or, despite knowledge of such behavior and/or investigations involving Deputy Patterson, retaining Deputy Patterson and permitting him to have unsupervised access to female detainees." Amend. Comp., Dkt. No. 1-3, at ¶ 79. The amended complaint does not indicate what the "inappropriate behavior" involved, when it occurred, who conducted the investigations, or the outcome of such investigations.

Furthermore, even assuming qualified immunity does not apply, Oakes has not alleged a sufficient claim for supervisory liability against Sheriff Hunt.[8] To establish supervisory liability, a plaintiff must show: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw, 13 F.3d at 799 (internal quotation marks omitted). The plaintiff assumes a heavy burden of proof in establishing deliberate indifference because:

> ordinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct. A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.

Id. at 799 (quoting Slakan v. Porter, 737 F.2d 368, 372-73 (4th Cir. 1984)).

The amended complaint alleges that Sheriff Hunt acted with deliberate indifference by failing to establish or enforce procedures which would have revealed Deputy Patterson's history of "inappropriate behavior," and would have prevented Deputy Patterson from both transporting

---

[8] While Deputy Patterson's alleged sexual assault of Oakes violated a clearly established constitutional right, Sheriff Hunt cannot be held vicariously liable for Deputy Patterson's conduct under § 1983. See Fisher v. Washington Metropolitan Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982) (Section 1983 requires a showing of personal fault on the part of a defendant, based either on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs); Strickler v. Waters, 989 F.2d 1375, 1387 (4th Cir. 1993) (sheriff sued pursuant to Section 1983 "cannot be held vicariously liable for any conduct of his subordinates"); Revene v. Charles County Comm'rs, 882 F.2d 870, 874 (4th Cir. 1989) (allegation of inadequate training was only basis on which to hold sheriff liable "because no claim is made that he was directly involved . . . and there is no vicarious liability under § 1983").

Oakes in his service vehicle and "deviat[ing] from appropriate prisoner transportation protocol." Amend. Compl., Dkt. No. 1-3, at ¶ 79. However, Oakes' reference to Deputy Patterson's history of "inappropriate behavior" and "previous investigations of sexually offensive conduct" does not sufficiently allege what the behavior involved, when the investigations occurred, the outcome of the investigations, or that Sheriff Hunt knew about these unspecified behaviors or investigations and should have anticipated Deputy Patterson's alleged criminal act. These bare allegations, without factual support or details, leave only the single incident of assault against Oakes as set forth in the amended complaint, and cannot sufficiently establish liability under § 1983. Furthermore, Oakes conclusory allegation that "[Sheriff] Hunt's lax, indifferent, grossly negligent, and reckless manner of running the Franklin County Sheriff's Department created an environment of entitlement and lawlessness among the deputies that emboldened Deputy Patterson to sexually violate a female prisoner without sufficient fear of reprisal to deter him from his predations" does not demonstrate causation. Id., at ¶ 80; see Slakan, 737 F.2d at 376 (Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff.). In short, the amended complaint does not present "enough fact to raise a reasonable expectation that discovery will reveal evidence" that Sheriff Hunt acted with deliberate indifference. See Twombly, 550 U.S. at 556).

Accordingly, Sheriff Hunt's motion to dismiss count IV will be granted.

(4) Punitive Damages

Oakes also brings a claim for punitive damages against Sheriff Hunt, alleging that Sheriff Hunt "is vicariously responsible for the actions of Deputy Patterson at all relevant times." However, under Virginia law, "[punitive] damages cannot be awarded against a master or

principal for the wrongful act of his servant or agent in which he did not participate, and which he did not authorize or ratify." Freeman v. Sproles, 204 Va. 353, 358, 131 S.E.2d 410, 414 (1963) (quoting Hogg v. Plant, 145 Va. 175, 181, 133 S.E. 759). Oakes does not allege that Sheriff Hunt participated in or authorized the alleged sexual assault, nor does she allege that Sheriff Hunt ratified Deputy Patterson's conduct.

Accordingly, Sheriff Hunt's motion to dismiss Oakes' claims for punitive damages will be granted.

## IV.

For the reasons stated, defendants Sheriff Overton and the WVRJ's motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) must be **GRANTED**. Sheriff Hunt's motion to dismiss must be **GRANTED** regarding counts III and IV, and **GRANTED IN PART** and **DENIED IN PART** as to count I. However, Oakes has not yet had an opportunity in federal court to amend her pleadings, and, therefore, Oakes' claims against these defendants will be dismissed without prejudice, with leave to file a second amended complaint within fourteen (14) days of the entry of the accompanying Order.[9] Oakes and her counsel are admonished, however, that should she refile without adequate allegations to state a claim, sanctions, including monetary and evidentiary sanctions, may be imposed against her and her counsel, pursuant to Federal Rule of Civil Procedure 11.

An appropriate Order will be entered.

Entered: April 17, 2013

/s/ Michael F. Urbanski
Michael F. Urbanski
United States District Judge

---

[9] Both the complaint and the amended complaint were filed in state court and, as plaintiff stated at oral argument, she has not yet had a chance to file a pleading meeting the federal standards; as such, the court will permit her leave to file a second amended complaint.